UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CORENO,<br>CDCR #T-86813,<br><br>                              Plaintiff,<br>v.<br><br>R. HILES, et al.,<br><br>                              Defendants. | Civil No.   09-cv-2504-LAB (POR)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF FROM DISCOVERY ORDER**<br><br>**[Doc. 22]** |

Plaintiff Joseph Coreno is proceeding *pro se* and *in forma pauperis* with a civil rights action under 42 U.S.C. § 1983. On April 6, 2010, Plaintiff filed a Motion for Permission to Serve a Set of Interrogatories and [Request for] Production of Documents at the Same Time the Second Amended Complaint is Served on Defendant [Warden] George Neotti. [Doc. 13.] Specifically, Plaintiff seeks discovery for the limited purpose of identifying the names of the Doe defendants in order to effect service. Id. at 4. On April 8, 2010, the Court granted Plaintiff leave to serve the discovery requests, but "[did] NOT issue an opinion as to the scope of the discovery requests under Federal Rule of Civil Procedure 26(b)." [Doc. 15 at 2.] On May 14, 2010, Plaintiff served Defendant Neotti with both the Second Amended Complaint and Interrogatories and Requests for Production. [Doc. 22-1 at 3.]

On May 26, 2010, Defendant Neotti filed a Motion for Relief from Order Granting Leave to Serve Interrogatories and Requests for Production of Documents. [Doc. 22.] In particular, Defendant requests that the Court set aside its Order of April 8, 2010 for the following reasons:

1  (1) Defendant intends to file a motion to dismiss for Plaintiff's failure to exhaust administrative
2  remedies, and "Defendant should not be required to respond to early discovery when the entire
3  action should be dismissed;" (2) "Defendant was served . . . after the Court granted Plaintiff's
4  motion [for leave to serve discovery], and therefore had no opportunity to oppose the motion;" and
5  (3) in light of the Court's authority to extend the period of service, it would be more efficient to
6  address the motion to dismiss before allowing early discovery.  [Doc. 22-1 at 1-2.]

## I. BACKGROUND – PLAINTIFF'S ALLEGATIONS

In his Second Amended Complaint, Plaintiff alleges the following two causes of action: (1) abuse, harassment, and deprivation of medical care in violation of the Eighth Amendment; and (2) retaliatory transfer of Plaintiff to another prison and Defendant Neotti's refusal to process Plaintiff's grievance forms, in violation of Plaintiff's Fourteenth Amendment right to due process. [Doc. 17.]

At approximately 5:00 p.m. on February 18, 2007, "Plaintiff's back went completely out," and he fell to the floor of his cell, unable to sit or stand up. Id. at ¶ 1. Plaintiff informed a correctional officer of his medical emergency, but no help arrived until "one or two hours later." Id. at ¶ 2. Despite Plaintiff's protestations of severe pain, two officers then handcuffed Plaintiff, placed him on a gurney with no wheels, dragged him to a van, and yanked him into the van by the arms. Id. at ¶¶ 3-12. The officers drove Plaintiff to the Correctional Treatment Center ("CTC"), where he was seen by Defendant R. Hiles, a registered nurse. Plaintiff explained the intense nature of his back pain and limited movement, but Defendant Hiles told Plaintiff "to stop complaining because it's not that bad." Id. at ¶ 25. Furthermore, Hiles stated that there was nothing more she could do, because no doctor was on duty, due to the holiday weekend. Id. at ¶¶ 20, 34. Hiles denied Plaintiff's request for testing, such as X-rays, and sent Plaintiff back to his cell without any treatment. Id. at ¶¶ 35-41.

Later that night, after continuing to call for medical attention as a result of ongoing intense pain and irregular breathing, three different officers approached his cell and promised him X-rays and medical treatment. Id. at ¶ 55. The officers then transported Plaintiff back to the van in the same rough manner as before. When Plaintiff screamed in pain, the officers laughed, mocked, and threatened him. Id. at ¶¶ 57-66. The officers drove Plaintiff to the CTC, but took him down

1  different hallways and left him in a wet holding cell. Id. at ¶¶ 70-73. A different registered nurse
2  visited the cell, and Plaintiff described the pain and numbness in his back and legs. The nurse told
3  Plaintiff "he looks fine" and repeatedly refused his requests for tests. Id. at ¶¶ 74-88. The officers
4  returned and locked Plaintiff in the wet holding cell. Plaintiff asked why they had lied about the
5  medical treatment, and the ranking officer replied that "he wanted to teach [Plaintiff] a lesson" for
6  "causing so much trouble." Id. at ¶¶ 97-98. Plaintiff asked to be taken back to his cell, but the
7  officers refused. Plaintiff then requested a toothbrush, soap, a change of clothes, and assistance
8  using the bathroom, but the officers denied the requests and left Plaintiff alone in the holding cell.
9  Id. ¶¶ at 105-08.
10       While in the cell, Plaintiff "was forced to urinate on [himself] and on the floor" and "lay in
11 his urine and smell it all night." Id. at ¶ 112-13. A different officer brought breakfast in the
12 morning, and Plaintiff asked for help. The officer refused, laughed, and told Plaintiff to stop
13 complaining. Plaintiff remained in these conditions, without access to the "basic essentials [like]
14 water [and] soap" for "2-3 days." Id. at ¶¶ 115-28.
15       On either February 20, 2007 or February 21, 2007, Plaintiff was moved to a *room* in the
16 CTC, where he was seen by Dr. Armstrong. After 3-4 weeks, Plaintiff began to walk again. On
17 March 22, 2007, Dr. Armstrong discharged Plaintiff and gave him a walker. Id. at ¶¶ 130-33. Then,
18 after being transferred to a different prison, Plaintiff met with Dr. Rodriguez, who ordered an MRI
19 and conducted nerve damage tests. Id. at ¶¶ 139-41. The tests demonstrated serious injury, and Dr.
20 Rodriguez put Plaintiff on pain medication and sent him to a specialist, who recommended lumbar
21 fusion surgery. Id. at ¶¶ 142-43. Plaintiff further alleges that he "is in a substantial amount of pain
22 everyday and is limited on the things he can do." Id. at ¶ 144. Count I of the Second Amended
23 Complaint, deprivation of medical care, incorporates the foregoing allegations and names R. Hiles
24 and seven Does (the unidentified officers and nurse) as Defendants.
25       Count II of the Second Amended Complaint sets forth allegations of administrative
26 misconduct. On April 26, 2007, one month after Plaintiff filed his first grievance as to the events
27 alleged above, Plaintiff was transferred to Salinas Valley State Prison. Id. at ¶¶ 135, 149. Over the
28 next two years, Plaintiff submitted numerous grievance forms, inmate requests to the Appeals

Coordinator, and letters to the previous prison, inquiring into the status of his grievance filings. Id. at ¶¶ 152-63. On July 24, 2009, the Health Care Appeal Coordinator responded that "there is no record of any 602's [grievance forms]." Id. at ¶ 164. In sum, Count II alleges that prison officials refused to process Plaintiff's grievance forms and transferred him to Salinas Valley State Prison in retaliation for filing the first grievance form. In Count II, Plaintiff names Warden Neotti as the sole Defendant.

## II. DISCUSSION

In a civil rights action brought by a prisoner without the assistance of counsel, early discovery is available in certain circumstances. For example, the Ninth Circuit has held:

> [W]here the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999)(quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). In Gillespie, the plaintiff, a prisoner proceeding *pro se,* filed a civil rights action against several U.S. Marshals, prison officials, and prison guards. However, the complaint did not name *all* the defendants. Instead, plaintiff identified the unknown defendants as "John Doe" and "filed interrogatories requesting from the named defendants the names and addresses of the [unnamed defendants]." Gillespie, 629 F.2d at 642-43. The district court denied the request for discovery and dismissed the complaint, but the Ninth Circuit reversed and held that the "district court abused its discretion in not permitting the discovery sought by the [prisoner] . . . [as] [i]t was very likely that the answers to the interrogatories would have disclosed the identities of the 'John Doe' defendants." Id. at 643.

The Gillespie and Wakefield holdings govern the present case. Plaintiff has named and served Defendant Neotti and seeks discovery to identify the names and addresses of the John Doe defendants.[1] Based on the current record, there is no evidence that Plaintiff knew the identities of

---

[1] In addition, Plaintiff seeks "the address or last known address or the name and address of new employment [of] Defendant Registered Nurse "RN" R. Hiles." (Pl.'s Interrogs. [Doc. 13-1] at ¶ 9.) Plaintiff has attempted to serve Defendant R. Hiles at two different prisons, but both prisons returned the summons unexecuted without advising Plaintiff of R. Hiles' actual facility of employment. [Docs.

1  the John Doe defendants before filing his Second Amended Complaint.  Furthermore, Plaintiff was
2  transferred to a different prison shortly after the alleged mistreatment, making it difficult, if not
3  impossible, for Plaintiff to identify personnel at the previous prison without the aid of discovery.
4  Thus, under clearly established controlling precedent, Plaintiff is entitled to limited discovery as to
5  the identification of the John Doe defendants "unless it is clear that [1] discovery would not uncover
6  the identities, or that [2] the complaint would be dismissed on other grounds."  Wakefield, 177 F.3d
7  at 1163 (quoting Gillespie, 629 F.2d at 642).

**A.     Whether Discovery Would Uncover the Identities of the John Doe Defendants**

Plaintiff's requested discovery will likely "uncover the identities" of the unnamed defendants.  First, the Second Amended Complaint contains detailed allegations of the events, and individuals, underlying Plaintiff's Eighth Amendment claim.  For example, Plaintiff has described John Does No. 1 and No. 2 as "Male Correctional Officers . . . working at Donovan State Prison [on February 18, 2007 in] Fac. 2, building 7, Ad-Seg, . . . 3rd watch from 2:00 p.m. to 10:00 p.m."  (Second Am. Compl. at ¶ 3.)  Second, Plaintiff's interrogatories and requests for production are narrowly tailored to these individuals, times, and places.  See, e.g., Interrogatory No. 1 [Doc. 13-1] ("Please state the names of the correctional officers [] who escorted the Plaintiff, Joseph Coreno, who was housed in Administrative Segregation [] on Fac. 2-7-124, from his cell to the Correctional Treatment Center [] and back on 2-18-07 in between 6:00 p.m. and 9:00 p.m.").  Thus, like the situation in Gillespie, it is "very likely that the answers to the interrogatories would [disclose] the identities of the 'John Doe' defendants."  Gillespie, 629 F.2d at 643.  Accordingly, the central issue becomes whether the Second Amended Complaint will be dismissed on other grounds.  Id. at 642.

**B.     Whether the Complaint Would Be Dismissed on Other Grounds**

Even assuming that Defendant Neotti has standing to move to dismiss the *entire* Second Amended Complaint,[2] it is not clear that a motion to dismiss for failure to exhaust administrative

---

10, 20.]  Thus, Plaintiff's request for discovery includes requests for both R. Hiles' address and the names and addresses of the John Doe defendants.

[2] As stated in Section I of this Order, Count I of the Second Amended Complaint does not name Warden Neotti as a Defendant.  Thus, allowing Defendant Neotti to file a motion to dismiss the entire Second Amended Complaint risks the possibility of leaving Plaintiff dead in procedural waters.

remedies would be successful. Under the California Code of Regulations, "an inmate must submit an appeal within fifteen working days of the event or decision being appealed, but the appeals coordinator is only permitted to reject an appeal if '[t]ime limits for submitting the appeal are exceeded *and* the appellant had the opportunity to file within the prescribed time constraints.'" Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)(citing and quoting Cal.Code Regs. tit. 15 §§ 3084.6(c) and 3084.3(c)(6), respectively) (emphasis in Ninth Circuit's opinion). In Marella, a state prisoner filed a complaint against prison officials under 42 U.S.C. § 1983, alleging constitutional violations stemming from a knife attack by fellow inmates. Id. at 1026. After the knife attack, "Marella spent two days in the hospital, subsequently moved to the infirmary, and finally, was placed in administrative segregation." Id. By the time Marella filed his grievance form, 33 days had passed since the knife attack, and the prison denied the grievance as untimely. Id. Based on the untimeliness of the grievance form, the district court dismissed Marella's complaint for failure to exhaust administrative remedies. Id. However, the Ninth Circuit reversed, holding that:

> [T]he prison's regulations explicitly create an exception to the timely filing requirement. If Marella was unable to file within the fifteen-day filing period, his failure to file timely does not defeat his claim. The [magistrate judge] found that Marella was only in the hospital for two nights, but . . . did not make factual findings as to whether Marella had *access to the necessary forms* and whether he had the *ability to file* during his stay in the hospital and prison infirmary, or during the administrative lockdown. On remand, the district court should consider whether Marella had the opportunity to file within fifteen days following the assault.

Id. at 1027 (emphasis added).

In light of the holding in Marella, the current record suggests that Plaintiff *might* find relief from the 15-day filing requirement. In particular, Plaintiff alleges that following his confinement in the wet holding cell, he was moved to a room in the CTC. Furthermore, Plaintiff's stay in the CTC lasted a month, until March 22, 2007, and during that time, he was unable to walk. (Second Am. Compl. at ¶¶ 129-33.) On March 26, 2007, four days after leaving the CTC, Plaintiff filed his first grievance form with the prison. Thus, unless Plaintiff "had access to the necessary [grievance] forms" during his stay in the CTC and "had the ability to file" the grievance form during his stay in

---

Specifically, if the Court dismissed Count II, but did not dismiss Count I, then Plaintiff would be expected to prosecute his case against unnamed defendants, without a single individual upon whom he could effect service of a summons, complaint, or discovery.

the CTC, "his failure to file timely does not defeat his claim." Marella, 568 F.3d at 1027. At present, the record contains no evidence that Plaintiff had either access to the forms or the ability to fill out and file a form while recuperating at the CTC. Accordingly, it is not clear that the Second Amended Complaint will be dismissed for failure to exhaust administrative remedies, and as a result, Plaintiff is entitled to his requested discovery. See Wakefield, 177 F.3d at 1163; Gillespie, 629 F.2d at 642.

### III. CONCLUSION

Under the Ninth Circuit's holdings in Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999), and Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980), Plaintiff "should be given an opportunity through discovery to identify the unknown defendants." Gillespie, 629 F.2d at 642. Furthermore, Plaintiff's interrogatories and requests for production are relevant and narrowly tailored to identifying the individuals who allegedly committed the acts underlying Count I of the Second Amended Complaint. Therefore, based on controlling precedent and the record currently before the Court, Defendant Neotti's Motion for Relief from Order Granting Leave to Serve Interrogatories and Requests for Production of Documents [Doc. 22] is hereby DENIED.

IT IS SO ORDERED.

DATED: June 14, 2010

LOUISA S PORTER
United States Magistrate Judge

cc: The Honorable Larry A. Burns
All parties