1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

JOSEPH CORENO,
CDCR #T-86813,

Civil No.    09-cv-2504-LAB (POR)

11

12

Plaintiff,

**REPORT AND RECOMMENDATION
THAT DEFENDANT'S MOTION TO
DISMISS BE GRANTED IN PART AND
DENIED IN PART AS TO DEFENDANT
NEOTTI ONLY**

13

v.

MARC ARMSTRONG, et al.,

14

15

Defendants.

**[ECF NO. 36]**

16

## I. INTRODUCTION

17

       This Report and Recommendation is submitted to United States District Judge Larry A.

18

Burns pursuant to U.S.C. § 636(b)(1) and Local Civil Rule 72.3 of the United States District Court

19

for the Southern District of California.

20

       Plaintiff, an inmate currently incarcerated at Kern Valley State Prison, is proceeding *pro se*

21

and *in forma pauperis*, on a civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 33.)

22

Plaintiff asserts that, while he was incarcerated at the Richard J. Donovan Correctional Facility

23

(RJDCF) in San Diego, California, Department of Corrections and Rehabilitation (CDCR) officials

24

violated his First, Eighth, and Fourteenth Amendment rights. *Id.* at 7.  Specifically, Plaintiff alleges:

25

(1) between February 18 and 20, 2007, Defendants were deliberately indifferent to Plaintiff's serious

26

medical needs in violation of the Eighth Amendment; (2) Defendant Neotti retaliated against

27

Plaintiff for filing a grievance by transferring him to another prison in violation of the First

28

Amendment; (3) Defendant Neotti and other officials denied Plaintiff access to the courts by

1   refusing to process his inmate grievance concerning the alleged February 18 to 20, 2007

2   mistreatment in violation of the First Amendment; and (4) Defendants violated Plaintiff's Fourteenth

3   Amendment right to due process.[1] *Id.* at 25-28.

4       On December 15, 2010, Defendant Neotti, Warden of RJDCF, filed a Motion to Dismiss

5   Plaintiff's Complaint.  (ECF No. 36-1.)  Despite multiple extensions of time, Plaintiff did not file an

6   Opposition to Defendant Neotti's motion.  (*See* ECF Nos. 39, 40, 45, 49.)  Where a plaintiff appears

7   *in propria persona* in a civil rights case, the court must construe the pleadings liberally and afford

8   the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623

9   (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."

10  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  Thus, the Court has liberally construed

11  Plaintiff's claims against Defendant Neotti in addressing this motion.

12      As of the date of this Order, Defendant Neotti is the only Defendant who has been served

13  with Plaintiff's Third Amended Complaint.  Plaintiff seems to raise three claims against Defendant

14  Neotti: (1) Defendant Neotti retaliated against Plaintiff for filing a grievance by transferring him to

15  another prison in violation of the First Amendment; (2) Defendant Neotti and other officials denied

16  Plaintiff access to the courts by refusing to process his inmate grievance concerning the alleged

17  February 18 to 20, 2007 mistreatment in violation of the First Amendment; and (3) Defendant Neotti

18  violated his Fourteenth Amendment rights.  (ECF No. 33 at 28-30.)  Based on a liberal reading of

19  Plaintiff's Third Amendment Complaint, however, the Court finds Plaintiff does not raise an Eighth

20  Amendment claim against Defendant Neotti.  Accordingly, the Court will not address Plaintiff's

21  Eighth Amendment claim against the remaining Defendants in this Order.

22      Nevertheless, the Court notes that Plaintiff is diligently attempting to serve Defendants R.

23  Hiles, Sergeant E. Ortiz, C. Cortz and J. Hunt.  On May 5, 2011, Plaintiff brought a Motion for

24  Summons.  (ECF No. 42.)  Plaintiff claimed the U.S. Marshal Service never received the summons

25  and paperwork required to serve Defendants E. Ortiz, J. Hunt and C. Cortez.  Plaintiff seemed to

26  _____

27      [1] At this time, the Court cannot ascertain whether Plaintiff raises multiple claims under the Eighth Amendment.  It appears Plaintiff challenges his medical treatment, as well as the conditions of his confinement.  Because the Court finds

28  Plaintiff does not raise Eighth Amendment claims against Defendant Neotti, it need not resolve this ambiguity in the instant order.

1    suggest the prison failed to mail his paperwork to the Marshal Service.  On June 6, 2011, the Court

2    granted Plaintiff's motion and sent him three copies of his Third Amended Complaint, three

3    summons and the paperwork necessary to effectuate service.  (ECF No. 46.)  On June 28, 2011,

4    Plaintiff's summons was returned unexecuted as to Defendant C. Cortez.  (ECF No. 48.)  If Plaintiff

5    fails to serve the remaining Defendants, the Court may consider dismissal of his claims for failure to

6    prosecute pursuant Rule 4(m) of the Federal Rules of Civil Procedure. *See Collins v. Pitchess*, 641

7    F.2d 740, 742 (9th Cir. 1981) (holding that incarceration does not absolve a plaintiff of the

8    responsibility to prosecute his actions diligently).  Because it is unclear whether service has been

9    effectuated as to Defendants E. Ortiz and J. Hunt, the Court does not make such a recommendation

10   at this time.

11          For the reasons set forth below and in accordance with Local Rule 72.1(d), the Court hereby

12   RECOMMENDS that Defendant Neotti's Motion to Dismiss be **GRANTED IN PART** and

13   **DENIED IN PART**.

14                                        **II. BACKGROUND**

15   **A.      Factual Background**

16          Plaintiff alleges on the evening of February 18, 2007, he experienced a serious back injury

17   while incarcerated at the Administrative Segregation Unit at RJDCF. (ECF No. 33 at 1.) According

18   to Plaintiff, his back went out and he fell to the floor of his cell; he was unable to sit or stand up. *Id.*

19   at 5.

20          Plaintiff claims he informed correctional officers, Defendants Doe #1 and Doe #2, of his

21   medical emergency, but no help arrived until "one or two hours later." *Id.* Thereafter, Plaintiff

22   asserts that despite his protestations of severe pain, the two officers handcuffed Plaintiff, placed him

23   on a gurney without wheels, dragged him across the floor to a van, and yanked him into the van by

24   the arms. *Id.* at 5, 9. The officers then drove Plaintiff to the Correctional Treatment Center, where he

25   was seen by Defendant Hiles[2], a registered nurse. *Id.* Plaintiff explained the intense nature of his

26   back pain and limited movement, but Defendant Hiles dismissed Plaintiff's injuries as "muscle

27   

28          [2] Defendant Hiles has also been referred to Defendant R. Hilis.

spasms." *Id.* at 9-11. Defendant Hiles told Plaintiff "to stop complaining because it's not that bad." *Id.* Furthermore, Defendant Hiles stated that there was nothing more she could do because none of the doctors were on duty due to the holiday weekend. *Id.* Plaintiff states Defendant Hiles denied his request to perform x-rays, an MRI, or nerve damage tests. Thereafter, Plaintiff was taken back to his cell at the Administrative Segregation Unit without any treatment. *Id.* at 12.

Later that night, after continuing to call for medical attention as a result of ongoing pain and irregular breathing, Defendants Sergeant Ortiz, Doe #4, and Doe #5 approached Plaintiff's cell and promised him x-rays and medical treatment. *Id.* at 13. The officers then transported Plaintiff back to the van in the same rough manner as before. *Id.* According to Plaintiff, when he screamed in pain, the officers laughed, mocked, and threatened him. *Id.* at 13-14. The officers drove Plaintiff to the Correctional Treatment Center, but took him down different hallways and left him in a wet holding cell.[3] *Id.* at 15. Plaintiff claims he was then examined by Defendant Cortez, a registered nurse. *Id.* Plaintiff described the pain and numbness in his back and legs to the nurse, but the nurse told him that nothing appeared wrong with Plaintiff and that he should be able to walk. *Id.* at 15-16.

Subsequently, the officers returned and locked Plaintiff in a wet holding cell. *Id.* at 16. Plaintiff asked why the officers had lied about the medical treatment and Sergeant Ortiz replied that "he wanted to teach [Plaintiff] a lesson" for "causing so much trouble." Id. at 17-18. Plaintiff asked to be taken back to his cell, but the officers refused. Id. Plaintiff then requested a toothbrush, soap, a change of clothes, and assistance using the bathroom, but the officers denied the requests and left Plaintiff alone in the holding cell. *Id.*

While in the cell, Plaintiff "was forced to urinate on [himself] and on the floor" and "lay in his urine and smell it all night." *Id.* at 19. A different officer brought breakfast in the morning and Plaintiff asked for help. *Id.* Plaintiff states that the officer refused, laughed, and told him to stop complaining. *Id.* Plaintiff asserts these conditions continued for another two to three days, and that everyone who came to see him, including correctional officers, nurses and doctors, refused to help him. *Id.* at 20.

_____

[3] Plaintiff provides the following definition for a wet cell: "a cell with only a toilet and sink." (ECF No. 33. at 29.)

On either February 20, 2007 or February 21, 2007, Plaintiff was moved into another cell in the Correctional Treatment Center, where Dr. Armstrong treated him. *Id.* Plaintiff was discharged three to four weeks later with a walker. *Id.*

On April 26, 2007, Plaintiff was transferred to Salinas Valley State Prison ("SVSP"). *Id.* at 21. Plaintiff met with Dr. Rodriguez, who ordered an MRI and conducted nerve damage tests. *Id.* The tests demonstrated serious injury, and Dr. Rodriguez put Plaintiff on pain medication and sent him to a specialist, who recommended lumbar fusion surgery. *Id.* As a result of his injuries, Plaintiff further alleges he "is in a substantial amount of pain everyday and is limited on the things he can do." *Id.*

**B.   Administrative Appeals**

Plaintiff alleges that he submitted a series of administrative appeals beginning in March 2007. *Id.* at 6, 20-21. However, the institutional levels of review at RJDCF and the Health Care Appeals Office claimed they did not receive an appeal from Plaintiff until July 2009. (ECF No. 36-4.)

**1.   Initial Administrative Appeals**

According to Plaintiff, on March 26, 2007, he submitted a CDC 602 inmate appeal form detailing the mistreatment that occurred between February 18 and 20, 2007. *Id.* at 6, 20, Exhibit A. Plaintiff also claims he submitted a second CDC 602 form on June 4, 2007 because he had not received a response regarding his first administrative appeal.[4] *Id.* at 6, 21, Exhibit B.

Plaintiff asserts that for a period of two years after the alleged mistreatment that took place between February 18 and 20, 2007, he made numerous inquiries to RJDCF regarding the status of his grievance filings.[5] In June 2008, for instance, Plaintiff claims he submitted a CDC 602 inmate appeal form inquiring about the appeal forms he filed on March 26, 2007, and June 4, 2007. *Id.* at 6.

---

[4] On June 4, 2007, Plaintiff allegedly submitted a duplicate of the CDC 602 inmate appeal form which, Plaintiff claims to have filed on March 26, 2007. (ECF No. 33 at Exhibit B.)

[5] Plaintiff made various other inquiries. On August 6, 2007, Plaintiff submitted an inmate request to the Appeals Coordinator, asking about the 602s Plaintiff had already submitted. *Id.* at Exhibit C. On November 14, 2007, Plaintiff sent a letter to RJDCF asking about all the 602s and requests that had not been answered. *Id.* at Exhibit D. In January 2009, Plaintiff claims he sent another letter to RJDCF asking about the two 602s (March 2007 and June 2007). *Id.*

1 However, it is unclear whether Plaintiff's initial CDC 602 forms were actually received by any

2 institutional level of review at RJDCF or the Health Care Appeals Office because neither the

3 Medical Appeals Tracking System ("MATS") nor the records of the institutional levels of formal

4 review at RJDCF indicate that any such appeal was received by RJDCF at or near the dates asserted

5 by Plaintiff. (ECF No. 36-4. at Exhibit A, 2-5.)[6] The copy of the CDC 602 appeal form that Plaintiff

6 allegedly filed on March 26, 2007, does not contain a date stamp indicating it was filed. *Id.*

7           **2.      Subsequent Administrative Appeals**

8                 **a.      July 2009 Administrative Appeal**

9           On July 8, 2009, more than two years after the alleged mistreatment, Plaintiff submitted a

10 CDC 602 inmate appeal form referring to the misconduct that took place between February 18 and

11 20, 2007. *Id.* at 23, Exhibit E. In that appeal, Plaintiff references the CDC 602 forms he claims to

12 have filed on March 26, 2007 and June 4, 2007. *Id.* He also stated  he suffered retaliation in violation

13 of his First Amendment rights during the events that occurred between February 18 and 20, 2007. *Id.*

14 On July 22, 2009, Plaintiff also asserted he submitted an inmate request to the Health Care appeals

15 coordinator inquiring about the status of his 602s. *Id.*

16           Around July 28, 2009, Plaintiff's CDC 602 inmate appeal form, dated July 8, 2009,

17 was screened out, rejected, and returned to Plaintiff based on California Code of Regulations title

18 15, § 3084.3(c)(6) for failure to file the grievance within the prescribed time constraints. *Id.* at 23.

19 Plaintiff was instructed he could not appeal this result unless he demonstrated that the reasons for

20 the screen out were inaccurate. (ECF No. 36-4 at 3.)

21                 **b.      August 2009 Administrative Appeal**

22           On or about August 21, 2009, Plaintiff re-submitted his CDC 602 inmate appeal

23 form, originally dated July 8, 2009. (ECF No. 33. at 23-24.) Then on August 24, 2009, the Health

24 Care Appeals Coordinator screened out and returned to Plaintiff his re-submitted CDC 602 inmate

25 appeal form, originally dated July 8, 2009, because it was untimely. *Id.* at 24. Plaintiff was again

26 instructed he could not appeal this result unless he demonstrated that the reasons for the screen out

27

28           [6] The same document was included in Allamby's Declaration (ECF No. 36-2. at Exhibit A), Foston's Declaration (ECF No. 36-3. at Exhibit A), and Walker's Declaration (ECF No. 36-6. at Exhibit A.).

1   were inaccurate. (ECF No. 36-4. at 4.) Finally, on August 25, 2009, Plaintiff submitted another 602

2   with a letter directly to Sacramento for 3rd level review. *Id.*

3   **C.     Procedural Background**

4        **1.     Plaintiff's First Federal Complaint**

5        On November 25, 2009, Plaintiff filed his first civil rights complaint against Defendants in

6   the United States District Court of the Southern District of California pursuant to 42 U.S.C. § 1983.

7   (ECF No. 1.) Plaintiff alleged Defendants violated his Eighth Amendment right to medical care and

8   freedom from cruel and unusual punishment. *Id.* at 6. On March 8, 2010, Plaintiff sought leave to

9   file a Second Amended Complaint. (ECF No. 11.)

10       **2.     Plaintiff's Second Amended Complaint**

11       On April 7, 2010, the Court granted Plaintiff leave to file a Second Amended Complaint

12  (ECF No. 14), which he did on April 23, 2010. (ECF No. 17.) Plaintiff named Doe Defendants, R.

13  Hiles, a nurse, and George Neotti, warden at RJDCF, in his Second Amended Complaint. *Id.* at 2-4.

14  Plaintiff alleged the following causes of action: (1) abuse, harassment, and deprivation of medical

15  care in violation of the Eighth Amendment; (2) retaliatory transfer of Plaintiff to another prison in

16  violation of the Fourteenth Amendment; and (3) Defendant Neotti's refusal to process Plaintiff's

17  grievance forms in violation of Plaintiff's Fourteenth Amendment right to due process.[7] *Id.* at 5.

18       On July 9, 2010, Defendant Neotti, the only defendant served, filed a Motion to Dismiss the

19  Second Amended Complaint. (ECF No. 25.)

20       **3.     Plaintiff's Third Amended Complaint**

21       While Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint was pending,

22  Plaintiff sought and was granted leave to file a Third Amended Complaint, which he did on

23  December 6, 2010. (ECF No. 33.) Plaintiff's Third Amended Complaint is identical to his Second

24  Amended Complaint, except that he has now substituted the true identities of two Doe Defendants:

25  Sergeant Ortiz for Doe 3 and C. Cortez for Doe 6. *Id.* Plaintiff again alleges Defendants violated his

26

27       [7] Plaintiff argues prison officials refused to process Plaintiff's grievance forms and transferred him to Salinas Valley

28  State Prison in retaliation for filing the first grievance form. *Id.*

rights by: (1) demonstrating willful indifference to his medical and other needs in violation of the Eighth Amendment; (2) transferring him to another prison in violation of the First Amendment; (3) refusing to process his late inmate grievance concerning the February 18 to 20, 2007 mistreatment in violation of the First Amendment; and (4) violating his Fourteenth Amendment right to due process. (ECF No. 33. at 25-28.) Because the Third Amended Complaint superseded the Second Amended Complaint, the Court denied Defendant's Motion to Dismiss the Second Amended Complaint as moot. (ECF No. 35.)

On December 15, 2010, Defendant Neotti filed a Motion to Dismiss Plaintiff's Third Amended Complaint, arguing: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff failed to state a claim against Defendant. (ECF No. 37-1.)

Immediately after Plaintiff filed his Third Amended Complaint, the Court provided Plaintiff with the materials necessary to complete U.S. Marshal Service of the Third Amended Complaint. (ECF No. 34.) On May 5, 2011, however, Plaintiff brought a Motion for Summons, stating the U.S. Marshal Service recently notified him that it never received the summons and paperwork required to serve Defendants E. Ortiz, Dr. Hunt, and C. Cortez with his Third Amended Complaint. (ECF No. 42.) Plaintiff requested the Court send new copies of the paperwork to complete U.S. Marshal Service. *Id.* On June 6, 2011, the Court granted Plaintiff's Motion for Summons. (ECF No. 46.)

### III. DISCUSSION

Plaintiff raises three claims in his Third Amended Complaint against Defendant Neotti: (1) Defendant Neotti retaliated against Plaintiff for filing a grievance by transferring him to another prison in violation of the First Amendment; (2) Defendant Neotti and other officials denied Plaintiff access to the courts by refusing to process his inmate grievance concerning the alleged February 18 to 20, 2007 mistreatment in violation of the First Amendment; and (3) Defendant violated Plaintiff's Fourteenth Amendment right to due process.  (ECF No. 33 at 25-28.)  Defendant Neotti moves to dismiss the claims against him, arguing: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff failed to state a claim upon which relief may be granted. (ECF No. 37-1.)  The court shall address each contention separately below.

Based on a liberal reading of Plaintiff's Third Amended Complaint, the Court finds Plaintiff

1    does not raise an Eighth Amendment claim against Defendant Neotti.  Rather, it appears Plaintiff's

2    Eighth Amendment claim is directed against the unserved Defendants.  To the extent Plaintiff seeks

3    to raise an Eighth Amendment claim against Defendant Neotti, the Court notes there is no

4    respondeat superior liability under 42 U.S.C. § 1983.  *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38

5    (9th Cir. 1993).  Therefore, when a named defendant holds a supervisory position, a causal link

6    between him and the claimed constitutional violation must be specifically alleged.  *See Fayle v.*

7    *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

8    Should Plaintiff seek to amend his pleadings to state a claim for relief under Section 1983 based on a

9    theory of supervisory liability, Plaintiff must allege some facts that would support a claim that

10   Defendant Neotti either: personally participated in the alleged deprivation of constitutional rights,

11   knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so

12   deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of

13   the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations

14   omitted); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

15   **A.      Failure to Exhaust Administrative Remedies**

16          The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide

17   that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

18   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

19   administrative remedies as are available are exhausted.  42 U.S.C. § 1997e(a).  Exhaustion in

20   prisoner cases covered by §1997e(a) is mandatory – it is a prerequisite for all prisoner suits

21   regarding the conditions of their confinement, whether they involve general circumstances or

22   particular episodes, and whether they allege excessive force or some other wrong.  *Porter v. Nussle*,

23   534 U.S. 516, 524, 532 (2002).  Even when a prisoner seeks relief not available in grievance

24   proceedings, notably monetary damages, exhaustion is a prerequisite to suit.  *Id.*; *Booth v. Churner*,

25   532 U.S. 731, 741 (2001).  Non-exhaustion under § 1997e(a) is an affirmative defense, which should

26   be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

27   Procedure 12(b).  *Wyatt v. Terhune*, 315 F.3d 1108, 1109 (9th Cir. 2003).

28          The PLRA requires proper exhaustion of administrative remedies.  *Woodford v. Ngo*, 548

U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff" that an inmate "can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." CAL. CODE REGS. tit. 15 § 3084.1(a). It also provides the right to file appeals alleging misconduct by correctional officers and officials. *Id.* at § 3084.1(e). In order to exhaust available administrative remedies with the California system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing CAL. CODE REGS. tit. 15 § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e. *Id.* at 1237-38. Moreover, a prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005); *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009).

To file a grievance, California law requires that prisoners "use a CDC Form 602 . . . to describe the specific issue under appeal and the relief requested." CAL. CODE REGS. tit. 15 § 3084.2(a). A grievance "need not contain every fact necessary to prove each element of an eventual legal claim." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). So long as a prisoner's CDC

602 form provides sufficient information to notify prison officials of the problem and allow them to take appropriate measures, the exhaustion requirement may be satisfied.  *Id.* at 1120-21 (noting the "primary purpose of a grievance is to notify the prison of the problem and facilitate its resolution, not to lay groundwork for litigation").

The California Code of Regulations further requires a prisoner to "file a grievance within fifteen working days of the event or decision that is the subject of the complaint, unless he lacked the opportunity and ability to file within the fifteen day period."  *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010) (citing *Marella*, 568 F.3d at 1027); *see also* CAL. CODE REGS. tit. 15 § 3084.6(c) (2010).[8]  If a prisoner has full opportunity and ability to file a grievance timely, but fails to do so, he has not properly exhausted his administrative remedies.  *Marella*, 568 F.3d at 1028.  However, the Ninth Circuit has held California prison regulations "explicitly create an exception to the timely filing requirement.  If [a prisoner] was unable to file within the fifteen-day filing period, his failure to file timely does not defeat his claim."  *Id.* at 1027.

In this case, for the reasons set forth below, the Court finds Plaintiff has failed to exhaust his administrative remedies.  However, it appears Plaintiff may be able to amend his pleadings in good faith to explain he did not have the "full opportunity or ability" to properly exhaust his claims.  *See Marella*, 568 F.3d at 1028 (remanding to allow plaintiff to submit evidence regarding exhaustion of remedies where plaintiff spent more than fifteen days in the hospital, infirmary and then administrative segregation after the incident that gave rise to his complaint).  If Plaintiff amends his pleadings to demonstrate he did not have the full opportunity or ability to properly exhaust his claims, his failure to do so will not defeat his claims.  Accordingly, the Court RECOMMENDS Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint for failure to exhaust be **GRANTED** with leave to amend.

### 1.     Plaintiff Fails to Exhaust his First Amendment Retaliation Claim

In his Third Amended Complaint, Plaintiff claims Defendant Neotti violated his First

---

[8] The California Code of Regulations was amended on December 17, 2010, effective January 28, 2011.  *See* CAL. CODE REGS. tit. 15 §§ 3084.1-3084.8 (2011).  Because Plaintiff filed his 602 appeals and Third Amended Complaint prior to the amendments, the Court will apply the regulations in effect at that time.  *See Goolsby v. Ridge*, 2011 WL 2006303, at *5 n. 3 (S.D. Cal. May 23, 2011) (applying regulations in effect when plaintiff filed his amended complaint).

1   Amendment rights by transferring Plaintiff to SVSP in retaliation for filing a CDC 602 inmate

2   appeal form. (ECF No. 33 at 26.)  Defendant, in his Motion to Dismiss Plaintiff's Third Amended

3   Complaint, asserts Plaintiff failed to timely exhaust his administrative remedies regarding the

4   alleged retaliatory transfer. (ECF No. 36-1 at 8-9.)

5          In this case, despite Plaintiff's efforts, he did not follow procedural rules of the exhaustion

6   process for his First Amendment claim. In *Woodford*, the U.S. Supreme Court stated exhaustion

7   demands compliance with "critical procedural rules."  548 U.S. at 90-91.  Per the California Code of

8   Regulations, an appellant must submit an appeal within fifteen working days of the event or decision

9   being appealed, or of receiving an unacceptable lower level appeal decision. CAL. CODE REGS. tit.

10  15 § 3084.6(c) (2010).  Plaintiff claims after he was transferred to SVSP on April 26, 2007, he filed

11  a second CDC 602 inmate appeal form on June 4, 2007. (*See* ECF No. 33 at Exhibit B.) However,

12  Plaintiff did not discuss Defendant's retaliatory transfer to SVSP in that appeal. *Id.* Instead, Plaintiff

13  submitted an inmate appeal that was identical to the appeal he submitted on March 26, 2007. (*See*

14  ECF No. 33 at Exhibit A.)

15         Plaintiff raised the First Amendment retaliation claim for the first time on August 6, 2007,

16  when Plaintiff allegedly filed a Form 22, an Inmate Request for Interview. (ECF No. 33. at Exhibit

17  C.) In that request, Plaintiff claimed he filed his CDC 602 inmate appeal form on March 26, 2007

18  and "within 30 days after I filed it they shiped [sic] me out of the prison to here [SVSP]." *Id.*

19  Plaintiff claimed he submitted the Inmate Request for Interview form "asking about the 602s

20  Plaintiff [has] been turning in." (ECF No. 33. at 6.)  However, submitting the Form 22 was not

21  sufficient to exhaust administrative remedies as an Inmate Request for Interview does not stop the

22  clock for administrative appeal timelines (15 CCR § 3086(e)(2)) and does not exhaust administrative

23  remedies for purposes of court actions. (15 CCR § 3086(e)(1)).

24         Moreover, although Plaintiff's third CDC 602 inmate appeal form submitted and received by

25  RDJCF on July 8, 2009 alleges "reprisals"[9] in violation of Plaintiff's First Amendment rights, this

26  appeal was filed more than two years after Plaintiff's transfer to SVSP on April 26, 2007, and was

27

28         [9] In his July 2009 CDC Plaintiff alleges, "I believe after I filed the complaint reprisals were taken on me and within 30 days after I filed it CDC shipped me here to SVSP." (ECF No. 33 at Exhibit D.)

1   rejected as untimely. (ECF No 36-1 at Exhibit D.) Thus, any First Amendment claims against

2   Defendant based on the events alleged in his third CDC 602 form are necessarily time-barred under

3   California Code of Regulations Title 15, section 3084.6(c) because Plaintiff did not properly submit

4   his grievance within the prescribed fifteen working days of the transfer. *Woodford*, 548 U.S. at 95-

5   103. Plaintiff, therefore, did not comply with requirements of the administrative appeals process for

6   his First Amendment retaliation claim. *Woodford*, 548 U.S. at 92-103.

7       Although Plaintiff did not file his CDC 602 forms on time, the timely filing requirement may

8   be excused if Plaintiff can demonstrate he did not have the "full opportunity or ability" to properly

9   exhaust his claims.  *Marella*, 568 F.3d at 1027-28.  Even though Plaintiff was housed in the

10  Administrative Segregation Unit and the Correctional Treatment Center during the mistreatment,

11  according to the California Code of Regulations, he would have been entitled to use of the law

12  library and access to CDC 602 forms.[10]  Moreover, as relates to his First Amendment claims against

13  Defendant Neotti, Plaintiff fails to provide any explanation for his delay in submitting a 602 appeal

14  after his transfer.  However, if Plaintiff was unable to file a CDC 602 inmate appeal form within the

15  prescribed fifteen working days, Plaintiff should have included an explanation for the delay.  None

16  of his CDC 602 appeal forms, including the forms submitted and received by the RJDCF in July and

17  August 2009, provided an explanation for the delay in filing the inmate appeal.  (*See* ECF No. 33 at

18  Exhibit D, Exhibit E.)  Even based on a liberal reading of Plaintiff's Third Amended Complaint, the

19  Court cannot ascertain facts sufficient to excuse Plaintiff's inability to file within the fifteen day

20  period as currently plead.

21      Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's First

22  Amendment retaliation claim be **GRANTED** with leave to amend.

23  _____

24      [10] The CDCR shall ensure appeal forms are readily available to all inmates and parolees. Cal. Code. Regs. tit. 15

25  § 3084.1(c). Each warden shall ensure a library, law library and related services are maintained for the benefit of all inmates
    in their facility, including those inmates confined to segregated housing units. Cal. Code. Regs. tit 15 § 3120(a). When

26  unable to physically access the law library, an inmate may request access to legal material through delivery of those materials
    to the inmate by library staff. This process is referred to as law library paging. An inmate shall not be limited to law library

27  paging for access to legal materials except under extraordinary circumstances including, but not limited to, the following:
    (1) The inmate is directly under a prison lockdown.; (2) The inmate is under restricted movement due to his or her medical

28  status.; and (3) The inmate has been suspended from physical access to the law library pending investigation of a serious rule
    violation. Cal. Code. Regs. tit. 15 § 3120 (c).

**2.      Plaintiff Fails to Exhaust his First Amendment Access to the Courts Claim**

Plaintiff also claims Defendant violated his First Amendment rights by denying him access to the courts. (ECF No. 33 at 28.)  However, Defendant, in his Motion to Dismiss Plaintiff's Third Amended Complaint, does not assert Plaintiff has failed to exhaust his administrative remedies regarding his claim of denial of access to the courts. (ECF No. 36-1 at 8-9.) Therefore, the Court does not address the issue.

**3.      Plaintiff Fails to Exhaust his Fourteenth Amendment Due Process Claim**

In his Third Amended Complaint, Plaintiff asserts his Fourteenth Amendment rights were violated because Defendant Neotti retaliated against him by transferring him to SVSP for filing a 602 Complaint. (ECF No. 33 at 26.)  Plaintiff appears to bring a First Amendment retaliation claim under the generalized notion of due process.  Therefore, to the extent Plaintiff raises a retaliation claim through the Fourteenth Amendment, the Court finds Plaintiff failed to properly exhaust this claim for the reasons discussed above.  As currently plead, Plaintiff does not provide any reason for failing to file his grievance within the fifteen-day period prescribed by California law.

To the extent Plaintiff intends to raise a Fourteenth Amendment claim separate and apart from his First Amendment retaliation claims, the Court also finds he failed to properly exhaust the claim.  In following the administrative exhaustion procedures, an inmate must successfully file the CDC 602 inmate form within the prescribed fifteen working days of the event, *and* sufficiently complete the CDC 602 form by describing the problem. CAL. CODE REG. tit.15 §§ 3084.1-3084.7. Here, the Court finds Plaintiff did not properly exhaust his Fourteenth Amendment due process claim as he failed to file his CDC 602 forms within the required fifteen-day period and he failed to provide sufficient information in his appeal forms to notify prison officials of a Fourteenth Amendment violation.  *See Jones*, 549 U.S. at 219; *Griffin*, 557 F.3d at 1120.  In fact, Plaintiff only vaguely references a Fourteenth Amendment due process violation for the first time in the instant Complaint.  (ECF No. 33 at 26, 28.)

Accordingly, to the extent Plaintiff raises an independent Fourteenth Amendment claim, the Court RECOMMENDS Defendants' Motion to Dismiss be **GRANTED** with leave to amend.

*//*

**B.      Failure to State a Legally Cognizable Claim Against Defendant**

Assuming Plaintiff successfully exhausted his administrative remedies, Defendant moves to dismiss Plaintiff's Third Amended Complaint for failure to state legally cognizable claims.

**1.      Legal Standard**

**a.      Rule 12(b)(6) Motions to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). The old formula –- that the complaint must not be dismissed unless it is beyond doubt without merit –- was discarded by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Bell Atl. Corp. v. Twombly*, 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *see Halkin v. VeriFone, Inc.*, 11

F.3d 865, 868 (9th Cir. 1993); *see also Cholla Ready Mix*, 382 F.3d at 973 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." *Parks Sch. of Bus.*, 51 F.3d at 1484 (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996). Here, Plaintiff has attached various 602 grievances, an inmate request to the Appeals Coordinator and a letter to his Third Amended Complaint. (*See* ECF No. 33 at 32-59.) The Court will consider these exhibits in addressing Defendant's motion.

### b.   Standards Applicable to Pro Se Litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649

1  (internal quotation omitted).

2      Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it

3  determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*

4  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*,

5  809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed,

6  the court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim-Panahi*,

7  839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of

8  leave to amend is appropriate.  *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

9                   **c.      Stating a Claim Under 42 U.S.C. § 1983**

10      To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person

11  acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the

12  plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United

13  States.  42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th

14  Cir. 1986).

15          **2.      First Amendment Retaliation Claim**

16      Plaintiff contends Defendant Neotti violated his First Amendment rights by transferring him

17  to SVSP in retaliation for filing a CDC 602 inmate appeal form. (ECF No. 33 at 26.)

18      Defendant argues Plaintiff fails to state a legally cognizable claim for retaliation in violation

19  of the First Amendment. (ECF No. 36-1 at 12-13.) Specifically, Defendant argues because Plaintiff

20  failed to appeal any of his grievances beyond the first level of formal review, Defendant Neotti was

21  unaware of the subject matter of his inmate appeals and was, therefore, not in a position to know of,

22  much less retaliate against plaintiff for filing grievances.

23      The First Amendment provides protections against "deliberate retaliation" by prison officials

24  against an inmate's exercise of his right to petition for redress of grievances.  *Soranno's Gasco, Inc.*

25  *v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Because retaliation by prison officials may chill an

26  inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it

27  would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter*, 881 F.2d

28  828, 830 (9th Cir. 1989).  However, there must be a causal connection between the allegedly

1   retaliatory conduct and the action that purportedly provoked the retaliation.  Thus, "timing can

2   properly be considered as circumstantial evidence of retaliatory intent."  *Pratt v. Rowland*, 65 F.3d

3   802, 808 (9th Cir. 1995).  However, a plaintiff must show that the protected conduct was a

4   "substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco*, 874 F.2d at

5   1314; *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

6          Within the prison context, a viable claim of First Amendment retaliation entails five basic

7   elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because

8   of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

9   First Amendment rights, and (5) was not narrowly tailored to advance a legitimate correctional goal.

10  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Defendant Neotti asserts Plaintiff fails to

11  satisfy all of the elements of a First Amendment retaliation claim as established under *Rhodes*.

12               **a.      Element 1**

13         The first element of the *Rhodes* pleading standard requires Plaintiff to make an assertion that

14  a state actor took some adverse action against him.  *Rhodes*, 408 F.3d at 567-68. Defendant

15  acknowledges Plaintiff vaguely alleges Defendant Neotti transferred him to another correctional

16  facility. (ECF No. 36-1 at 14.) Plaintiff's pleadings could be construed to indicate Defendant Neotti

17  took adverse action against him. In his Third Amended Complaint, Plaintiff contends "Defendant

18  Warden George Neotti retaliated against Plaintiff and transferred him to S.V.S.P." (ECF No. 33 at

19  26.) Plaintiff also alleges in the CDC 602 form he submitted on July 8, 2009, "...CDC shipped me

20  here to SVSP."[11] (ECF No. 33 at Exhibit E.)  Therefore, Plaintiff satisfies element 1 of the *Rhodes*

21  pleading standard.

22               **b.      Element 2**

23         The second element of the *Rhodes* pleading standard requires Plaintiff to make an assertion

24  that a state actor took some adverse action against an inmate *because* he exercised his First

25  Amendment right.  *Rhodes*, 408 F.3d at 567-68. Again Defendant acknowledges Plaintiff vaguely

26  alleges Defendant Neotti transferred Plaintiff to another correctional facility in retaliation for

27

28         [11] Plaintiff includes a copy of his CDC forms in his Third Amended Complaint. (ECF No. 33 at Exhibit A, Exhibit B, Exhibit C, Exhibit D.)

1  Plaintiff's filing of inmate grievances. (ECF No. 36-1 at 14.) In his Third Amended Complaint

2  Plaintiff asserts, "Defendant Warden George Neotti retaliated against Plaintiff and transferred him to

3  S.V.S.P. for filing a 602 Complaint against the said defendants[,] [i]n violation of Plaintiff's 1st

4  Amendment rights to the U.S. Constitution." (ECF No. 33 at 26.) Plaintiff also contends that after

5  filing his first two CDC 602 inmate appeals, he sent the RJDCF Appeals Coordinator and the Health

6  Appeals Coordinator several communications claiming he was transferred to SVSP in retaliation for

7  filing an inmate appeal. (ECF No. 33 at 6-7, Exhibit C, Exhibit D, Exhibit E.)

8        For example, on August 6, 2007, Plaintiff filed a Form 22 Inmate Request for Interview in

9  which he stated: "while I was in Donovan I turned in a 602/complaint on 3-26-07 on correctional

10  officers and medical staff. Within 30 days after I filed it they shiped [sic] me out of the prison to

11  here..." (ECF No. 33 at Exhibit E.) In a letter dated November 14, 2007, Plaintiff also stated: "...after

12  they took me back to the hole I filed a 602/complaint and turned it in on 3-26-07, within 30 days

13  after I filed it they shiped [sic] me out of the prison to Salinas Valley State Prison, that is where I am

14  currently housed...I don't want you to get mad at me for filing these 602s and treat me the way they

15  treated me on 2-18-07 and the days after that." *Id.* In his third CDC 602 form, filed on July 8, 2009,

16  Plaintiff makes the same allegation, "I believe after I filed the complaint reprisals were taken on me

17  and within 30 days after I filed it CDC shipped me here to SVSP." (ECF No. 33 at Exhibit E.)

18  Therefore, Plaintiff satisfies element 2 of the *Rhodes* pleading standard.

19            **c.**     **Element 3**

20        The third element of the *Rhodes* pleading standard requires Plaintiff to show he exercised

21  protected conduct. *Rhodes*, 408 F.3d at 567-68. Defendant argues Plaintiff has failed to meet this

22  element. (ECF No. 36-1 at 14.)

23        However, Plaintiff's pleadings may be construed to indicate he exercised protected conduct.

24  *Rhodes*, 408 F.3d at 567-68. In his Third Amended Complaint, Plaintiff contends he filed

25  administrative appeals on March 26, 2007, June 4, 2007, July 8, 2009, and August 21, 2009. (ECF

26  No. 33 at 2, 22, Exhibit A, B, C, D, E.); *see Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) ("of

27  fundamental import to prisoners are their First Amendment "right[s] to file prison grievances").

28  Further, Plaintiff contends he informed the RJDCF Appeals Coordinator of the problem in a series of

1  communications.  *Id*. Therefore, Plaintiff satisfies this element of the *Rhodes* pleading standard.

2          **d.    Element 4**

3          The fourth element of the *Rhodes* pleading standard requires Plaintiff to show the harm

4  chilled his exercise of his First Amendment rights. *Rhodes*, 408 F.3d at 567-68. Defendant contends

5  Plaintiff fails to allege his exercise of his First Amendment rights were chilled, or that he was

6  silenced as a result of Defendant's alleged conduct.  (ECF No. 36-1 at 14.)

7          Although Plaintiff does not explicitly allege facts demonstrating Defendant's alleged actions

8  chilled his First Amendment rights, the Court finds Plaintiff's pleadings may be liberally construed

9  to indicate Plaintiff attempted to exercise his First Amendment rights, but was thwarted by

10  Defendant on numerous occasions. *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)

11  (deciding that alleged harm was enough to ground a First Amendment retaliation claim without

12  independently discussing whether the harm had a chilling effect, since harm that is more than

13  minimal will almost always have a chilling effect); *Valandingham v. Bojorquez*, 866 F.2d 1135,

14  1138 (9th Cir.1989) (same). For example, on August 6, 2007, he filed a Form 22 Inmate Request for

15  Interview in which he claimed, "while I was in Donovan I turned in a 602/complaint on 3-26-07 on

16  correctional officers and medical staff. Within 30 days after I filed it they shiped [sic] me out of the

17  prison to here...this is a very serious issue. Please try and do every thing you can to help me find

18  where these 602s went." (ECF No. 33 at Exhibit C.) Also, on November 14, 2007, he claimed:

19

20          ...after they took me back to the hole I filed a 602/complaint and turned it in on 3-26-
        07, within 30 days after I filed it they shipped me out of the prison to Salinas Valley
        State Prison, that is  where I am currently housed. I never received a response back
21      pertaining to the 602, so I turned in another one on 6-4-07 and I have not heard
        anything back on either of them. I don't want you c/o's to get mad at me for filing
22      these 602s and treat me the way the c/os treated me on 2-18-07 and the days after that.
        Please help me find out where these 602s are, and if they are being processed, and if
23      so send me the tracking # and due date.

24  (ECF No. 33 at Exhibit D.)  In the Third Amended Complaint, Plaintiff also claims, "Defendant

25  George Neotti and Defendants violated Plaintiff's first Amendment right to the U.S. constitution

26  by....not processing his 602/grievances." (ECF No. 33 at 28.)

27          Based thereon, Plaintiff satisfies element 4 of the *Rhodes* pleading standard.

28  *//*

### e.      Element 5

The final element of the *Rhodes* pleading standard requires Plaintiff to make an assertion that Defendant's actions did not advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567-68. Defendant contends Plaintiff fails to state facts asserting that the alleged transfer did not reasonably advance a legitimate correctional goal. (ECF No. 36-1 at 14.)

Here, Plaintiff claims Defendant Neotti transferred him to SVSP because Plaintiff filed 602 grievances regarding his medical care.  Thus, Plaintiff sufficiently states he was transferred for an illegitimate reason in satisfaction of the fifth element of the *Rhodes* pleading standard.

At this stage of the proceedings, therefore, Plaintiff has adequately alleged facts to meet all elements of a First Amendment retaliation claim.  Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's First Amendment claim against Defendant Neotti  be **DENIED** on this basis.

### 4.      First Amendment Access to the Courts Claim

Plaintiff also contends Defendant violated his First Amendment right to access to the courts by "not processing his 602/grievances." (ECF No. 33 at 28.)  Defendant argues Plaintiff has failed to assert a legally cognizable claim that Defendant Neotti's conduct prevented his access to the courts.

Under the First Amendment, state prisoners have a right to access the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821, 823, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)). "[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty." *Id.* at 384 (Thomas, J. concurring).  Interference with the inmate grievance process may implicate a prisoner's constitutional right of access to the courts. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 233 (2001).  To prove a violation of the right of access to the courts, a prisoner must establish, inter alia, "actual injury" – that is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

There are two types of access to the courts claims: backward-looking and forward-looking.

*See Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002).  A backward-looking claim concerns a lost opportunity to litigate, whereas a forward-looking claim concerns "official action [that] is presently denying an opportunity to litigate for a class of potential plaintiffs." *Id.* at 413.  Here, Plaintiff's claim is backward-looking because he alleges he was denied the opportunity to file his inmate grievances due to Defendant's actions.  (ECF No. 30 at 28.)  To adequately plead a backward-looking denial of access to the courts claim, Plaintiff must show: (1) the loss of a nonfrivolous or arguable underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Christopher*, 536 U.S. at 414-15.

As currently plead, the Court finds Plaintiff's Third Amended Complaint fails to state a cognizable access to the courts claim.  "[T]he object of a denial-of-access suit, and the justification for recognizing the claim, is to place the plaintiff in a position to pursue" the allegedly frustrated claim "once the frustrating condition has been removed." *Christopher*, 536 U.S. at 413.  Plaintiff fails to identify claims he has been unable to pursue as a result of Defendant's actions.  Based on a liberal construction of Plaintiff's Third Amended Complaint, the Court assumes Plaintiff argues his First and Eighth Amendment claims against Defendants have been stymied by Defendant Neotti's failure to process Plaintiff's 602 appeals.  If so, Plaintiff has not shown an actual injury from the alleged interference with his 602 appeals as Plaintiff has already received the relief provided by a denial of access claim, i.e., the ability to pursue his First and Eighth Amendment claims in a § 1983 complaint.  *See Rhoden v. Carona*, 2010 WL 4449711, at *21 (C.D. Cal. Aug. 24, 2010) (denying plaintiff's access to the courts claim because plaintiff presented his claims to the court in his § 1983 action).

Therefore, unless and until the Court dismisses Plaintiff's First and Eighth Amendment claims for failure to exhaust, Plaintiff's denial of access to the courts claim is premature.  At the present, this Court recommends dismissal based on failure to exhaust, but has also recommended Plaintiff have the opportunity to amend.  If on amendment, this Court dismisses the action with prejudice – that is, Plaintiff will have no further access to the courts for redress for his First and Eighth Amendment claims– then the claim for denial of access to the court may be ripe.  At that

1   point, Plaintiff may file a new separate action on his access to the courts claim.

2          Based thereon, the Court RECOMMENDS Defendant's Motion to Dismiss Plaintiff's First

3   Amendment access to the courts claim be **GRANTED** without prejudice to Plaintiff filing a separate

4   action should the Court dismiss this matter for failure to exhaust.

5          **5.       Fourteenth Amendment Due Process Claim**

6          Plaintiff makes a vague claim Defendant Neotti violated his Fourteenth Amendment rights

7   by retaliating against Plaintiff and transferring him to SVSP for filing a 602 Complaint. (ECF No. 33

8   at 26-28.)  In his Motion to Dismiss, Defendant argues Plaintiff fails to state a cognizable claim for a

9   due process violation. (ECF No. 36-1 at 17.)  In particular, Defendant contends Plaintiff fails to

10  make specific allegations that Defendant denied him either a liberty or property interest without

11  adequate due process. (*Id.*)

12         "If a constitutional claim is covered by a specific constitutional provision . . . the claim must

13  be analyzed under the standard appropriate to that specific provision, not under the rubric of

14  substantive due process" of the Fourteenth Amendment.  *County of Sacramento v. Lewis*, 523 U.S.

15  833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *accord Saucier v.*

16  *Katz*, 531 U.S. 991, 121 S.Ct. 2151 (June 18, 2001).  Here, Plaintiff appears to bring a First

17  Amendment retaliation claim under the generalized notion of due process.  Accordingly, the Court

18  has analyzed this claim under the First Amendment, as set forth above.  *See Albright v. Oliver*, 510

19  U.S. 266, 272-73 (1994) (noting that when a broad "due process" violation is alleged, but a

20  particular amendment "provides an explicit textual source of constitutional protection" against a

21  particular sort of government behavior, "that Amendment, not the more generalized notion of

22  'substantive due process,' must be the guide for analyzing these claims." (quoting *Graham v.*

23  *Connor*, 490 U.S. 386, 395 (1989)); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001).

24         To the extent Plaintiff raises a Fourteenth Amendment due process claim separate and apart

25  from his First Amendment retaliation claim, the Court finds Plaintiff fails to state a legally

26  cognizable claim because he does not allege any facts in support thereof with sufficient specificity.

27  If Plaintiff intends to amend his pleadings to raise a separate Fourteenth Amendment due process

28  claim, Plaintiff must show: (1) a life, liberty or property interest exists and has been subject to

interference by the state; and (2) the procedures attendant upon the deprivation of an existing

interest were constitutionally insufficient.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S.

454, 460 (1990).

Based thereon, the Court hereby RECOMMENDS Defendant's Motion to Dismiss Plaintiff's

Fourteenth Amendment claim against Defendant Neotti be **GRANTED** without prejudice.

## V. CONCLUSION

For the reasons set forth herein, the Court hereby RECOMMENDS Defendant Neotti's

Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Court

recommends:

1.   Defendant's Motion to Dismiss for failure to exhaust be GRANTED with leave to
     amend.

2.   Defendant's Motion to Dismiss for failure to state a legally cognizable claim be
     DENIED as to Plaintiff's First Amendment retaliation claim.  However, as noted
     above, the Court recommends this claim be dismissed for failure to exhaust.

3.   Defendant's Motion to Dismiss for failure to state a legally cognizable claim be
     GRANTED without prejudice as to Plaintiff's First Amendment access to the courts
     claim.

4.   Defendant's Motion to Dismiss for failure to state a legally cognizable claim be
     GRANTED without prejudice as to Plaintiff's Fourteenth Amendment claim.

The Court does not make any recommendation as to the claims Plaintiff raises against the

unserved Defendants at this time.

This Report and Recommendation will be submitted to the United States District Court judge

assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

objections with the Court and serve a copy on all parties on or before **August 31, 2011**.  This

document should be captioned "Objections to Report and Recommendation."  Any reply to the

objections shall be served and filed **no later than 10 days** after being served with the objections.

*The parties are advised that no extensions of time will be granted for purposes of filing objections.*

//

1   The parties are further advised that failure to file objections within the specified time may waive the

2   right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3        **IT IS SO ORDERED.**

4   DATED:  July 29, 2011

5

6                                             LOUISA S PORTER
                                              United States Magistrate Judge
7

8
   cc:      The Honorable Larry A. Burns
9            all parties

10           Joseph Coreno
             T-86813
11           Kern Valley State Prison
             P.O. Box 5107
12           Delano, CA 93216

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28